IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAMMY VASQUEZ,

        Plaintiff,

       v

MICHAEL J ASTRUE, Commissioner of
Social Security,

        Defendant.
                               /

No C 06-4540 VRW

ORDER

      Plaintiff Sammy Vasquez appeals from a decision by the Social Security Administration (SSA) Office of Hearings and Appeals denying his applications for disability benefits.  The administrative law judge (ALJ) determined that plaintiff did not satisfy the definition of "disabled" under Titles II and XVI of the Social Security Act.  Before the court are cross-motions for

\\

\\

summary judgment on whether the ALJ's determination that plaintiff is not disabled should stand.  Based on a careful review of the administrative record and the applicable law, the court DENIES plaintiff's motion and GRANTS defendant's motion.

I

A

Plaintiff is a forty-six-year-old male with a history of diabetes mellitus and hypertension.  AR 288.  Plaintiff has a high-school education, AR 18, but, according to his attorney, is "barely literate."  AR 442.  Plaintiff worked as a window installer from 1974 to 2001.  AR 149.

In January 2001, plaintiff sustained an injury from a fall which resulted in a fracture of his right shoulder.  AR 370.  A computed tomography (CT) scan of plaintiff's shoulder in April 2001 showed a fracture of his shoulder bone into small fragments.  AR 385.  Subsequent examination revealed delayed healing; plaintiff underwent surgery to repair his shoulder in August 2001.  AR 380-84.  Plaintiff was later examined by two consulting physicians:  Dr Calvin Pon, an orthopedic specialist, in April 2002 and Dr Jaskaran Momi, an internal medicine specialist, in November 2003.  Both doctors reported decreased range of motion in plaintiff's right shoulder, but noted that the injuries should not affect plaintiff's ability to perform fine and gross manipulative tasks with both hands.  AR 241, 291.

In addition to the shoulder injury, plaintiff also suffered a spider bite on his left foot, leading to a serious infection requiring multiple surgeries, called debridements, to

remove infected material from the wound, AR 207, 211, 213, followed by a skin graft. AR 202-04. In his April 2002 examination, Dr Pon noted that while the left calf had atrophied due to the injury, plaintiff should be able "to stand and/or walk for a total of six hours during an eight-hour work day." AR 241.

In 2003, plaintiff suffered a fracture to the first digit of his right foot. The fracture did not heal, and because of a preexisting ulcer and gangrene on the sole of the right foot, plaintiff underwent amputation of the first, fourth and fifth toes in June 2003. AR 271, 288. Plaintiff testified that the ulcer and gangrene formed when he cut his foot helping his landlord fill a swimming pool. AR 480. Slow healing, infections and ulcers leading to amputation commonly result from injuries suffered by diabetics, especially from injuries of the foot. Plaintiff's diabetes may have complicated the foot injuries.

Unfortunately, the list of plaintiff's injuries continues. In July 2003, an x-ray revealed another fracture of his right foot caused, according to plaintiff, by a taxicab running over his foot. AR 331. This fracture healed fully. AR 318, 328.

In November 2003, plaintiff saw consulting psychiatrist Dr Jasdeep Aulakh in connection with his application for benefits. AR 283. Dr Aulakh found that plaintiff suffered from depression, but his mental examination "revealed no evidence of cognitive deficits, perceptual disturbances or delusional disorders at this time." AR 287. It must be noted that Dr Aulakh's report refers to plaintiff throughout as a female. See, for example, AR 283 ("The claimant is a 43 year-old-divorced female"); AR 284 ("She stated that she continues to have trouble focusing and feels she has

3

problems with her memory and is easily forgetful"). This error may be clerical, but it raises questions concerning the accuracy of the examination.

Plaintiff was unemployed from 2001 forward. AR 466. Plaintiff lived for a period with his former girlfriend, Sharon Bailey, who wrote in a third-party function report that plaintiff was depressed because he "can't work anymore, [h]e can't go fishing, can't run or jog, can't throw a ball." AR 163. Bailey's report further stated that plaintiff "can't walk very far" and "has severe pain in feet and legs they jerk and spasm most of the night," AR 159, but he was capable of performing "a little cleaning, cooking, laundry." AR 160.

At one point in the relationship, a restraining order was filed against plaintiff to stay away from Bailey. AR 475. Plaintiff testified at his hearing that he was arrested for violating the restraining order and served four months in prison. Id. Plaintiff offered the improbable explanation that the restraining order had been lifted prior to the violation, but that it was not processed, resulting in his prison term. Id.

At the hearing plaintiff told the ALJ he was living with friends and was no longer in a relationship with Bailey. AR 465, 476. Per his testimony, plaintiff's social life consisted of going to the movies and seeing friends and he spent most of his time working on crossword puzzles and building model cars. Id. AR 483.

B

In May 2003, plaintiff filed an application for supplemental security income benefits (SSI). AR 89. In August of

that same year, plaintiff also filed an application for disability insurance benefits (DIB), alleging disability beginning January 25, 2001. AR 155. Both applications were denied initially and on reconsideration. AR 32, 41.

Plaintiff timely requested a hearing before an administrative law judge (ALJ). AR 46. The initial hearing was held August 25, 2005, but plaintiff was not present because he was unable to obtain transportation. AR 440-41. The hearing proceeded without him, and the ALJ heard testimony from vocational expert (VE) Malcolm Brodzinsky. AR 447-9. The ALJ posed the following hypothetical to the VE:

> Assume an individual who would have difficulty doing any work that would require balancing. No walking on uneven ground. No standing more than an hour at a time or more than six hours in a work day. No walking more than ten to 15 minutes at a time, two hours in a work day. No lifting over 20 pounds maximum and ten pounds repetitively, and no lifting over 10 pounds with the right arm.

AR 446. The VE then testified that there were a number of sedentary occupations which were suitable for plaintiff. AR 447-49. These occupations included ticket seller, small parts assembler, counter clerk in photography finishing, order clerk in the food and beverage industry and telephone price quotation clerk. Id.

The ALJ observed that plaintiff was not taking his prescribed medication and questioned how much one can "believe from somebody who's not complying with his medications anyway." AR 459. Plaintiff's attorney responded that plaintiff received his medication while in prison, but that he had problems getting his medication while out of prison. Id. The attorney noted that plaintiff had a "chaotic family life." AR 440.

5

The ALJ informed plaintiff's attorney that it "would be hard to find in his favor without his testimony." AR 442. Plaintiff's attorney requested a second hearing and the ALJ agreed. AR 459-60. On September 15, 2005, the ALJ granted plaintiff a further hearing, which was held on October 17, 2005. Plaintiff appeared and testified. AR 74, 461.

At the hearing, plaintiff testified that: he could only walk three blocks before he had to stop to rest and elevate his feet due to pain and numbness (AR 468); a doctor-prescribed metal cane assisted his walking (AR 478); he could only stand for about a half-hour at a time (id); and after sitting for ninety minutes he experienced numbing and tingling in his feet and "jerking" of his legs and to stop it he had to stand or elevate his feet. AR 469, 476. Plaintiff also testified that he experienced numbness in his hands and fingers affecting his ability to grip objects, explaining that he could use a knife to cut objects for nearly twenty minutes, at which point he had to stop to rub his hands, typically regaining feeling after thirty minutes. AR 484-86. Further, plaintiff stated that upon awakening his hands felt numb and cramped into a "claw like" grip, which his doctor had attributed to either diabetes or arthritis, and that the numbness sometimes affected his ability to use a pen, but not his ability to hold a telephone AR 486-87. Plaintiff testified that his doctor prescribed him pain medication for pain in his shoulder and legs and that he also took medication for diabetes, blood pressure and pain. AR 471.

On January 27, 2006, the ALJ issued an eight-page ruling denying plaintiff's applications for both SSI and DIB. AR 17-24. To determine whether plaintiff was entitled to benefits, the ALJ

conducted a five-step sequential evaluation of plaintiff's disability, which considered the following: (1) whether plaintiff was currently engaged in substantial gainful activity (SGA); (2) whether plaintiff had a "severe" impairment or a combination of impairments; (3) if plaintiff had a severe impairment, whether plaintiff had a condition which met or equaled the conditions outlined in the listing of impairments at 20 CFR Part 404, Subpart P, Appendix 1; (4) if plaintiff did not have such a condition, whether plaintiff was capable of performing his past work; and (5) whether plaintiff had the residual functional capacity (RFC) to perform any other work that exists in substantial numbers in the economy.  20 CFR § 404.1520; 20 CFR § 416.920.  Plaintiff bears the burden to prove disability in steps one through four.  At step five, the burden shifts to the SSA to establish that plaintiff "can perform a significant number of other jobs in the national economy." Thomas v Barnhart, 278 F3d 947, 955 (9th Cir 2002).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity after August 25, 2001.  AR 18.

At step two, the ALJ found that plaintiff's diabetes, foot injuries, amputation of the right foot and right shoulder fracture "significantly limit his abilities to perform basic work activities, as set forth at 20 CFR 404.1521 and 416.921, and must be deemed to be 'severe.'"  AR 19.  The ALJ found plaintiff's high blood pressure and depression "not severe."  AR 19.

At step three, the ALJ concluded that plaintiff's "severe" impairments did not equal "in severity and duration to any Listed findings."  AR 20.  The ALJ found that plaintiff did not meet Listing 1.02 because plaintiff's impairments "do not describe gross

anatomical deformity in a joint with chronic pain * * * resulting in an inability to perform fine and gross movements effectively or resulting in inability to ambulate effectively * * *." Id. The reports by both Dr Momi and Dr Pon indicated that plaintiff could perform fine and gross movements with both hands effectively. AR 21. The ALJ also found the partial amputation of plaintiff's right foot did not meet Listing 1.05 because that listing requires amputation of "both hands or one or both lower extremities." Id.

The ALJ then proceeded to step four. Through consideration of medical evidence, plaintiff's testimony and evidence from Bailey, the ALJ found plaintiff able to perform sedentary work because he was capable of "standing for thirty minutes at a time, walking three blocks at a time, lifting ten pounds frequently and twenty pounds occasionally, lifting no more than ten pounds with the right arm and no overhead lifting with the right arm." AR 22. On this basis, the ALJ found that plaintiff's RFC made it impossible for him to perform his past jobs and proceeded to step five. Id.

At step five, the ALJ found, based on the testimony of the VE, that plaintiff could perform the job of order clerk or telephone quote clerk, both of which exist in large numbers in the national economy. AR 23. For this reason, the ALJ found that plaintiff was not disabled. AR 23-24.

Plaintiff unsuccessfully requested review of the ALJ's decision from the SSA's Appeals Council. AR 7. On July 26, 2006, plaintiff timely filed his complaint seeking judicial review of the ALJ decision under 42 USC § 405(g).

\\

8

**II**

A district court may only overturn a decision to deny benefits only if the decision is not supported by substantial evidence or if the decision is based on legal error. 42 USC § 405(g); Andrews v Shalala, 53 F3d 1035, 1039 (9th Cir 1995). Id. The Ninth Circuit defines substantial evidence as more than "a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v Barnhart, 278 F3d at 954. The decision of the ALJ should be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F3d at 1040. The determination whether substantial evidence supports the ALJ's decision is based on the administrative record as a whole. Andrews, 53 F3d at 1040. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Magallanes v Bowen, 881 F2d 747, 750 (9th Cir 1989).

**III**

Plaintiff presents five issues on this appeal. Plaintiff contends that: (1) the ALJ erred by not finding that his impairments equaled Listing 1.02 in the Listing of Impairments; (2) the ALJ improperly discounted the subjective symptoms of pain and numbness that plaintiff reported; (3) the ALJ's determination that plaintiff was not impaired for a continuous twelve-month period was not supported by substantial evidence; (4) the ALJ's findings on

plaintiff's RFC were not supported by substantial evidence; and (5) the SSA did not establish the existence of other jobs plaintiff could perform because the ALJ posed an incorrect hypothetical to the VE.  Doc #10 at 5-10.

### A

Plaintiff argues that the ALJ did not make specific findings as to whether plaintiff's impairments equaled Listing 1.02, Disorders of the Musculoskeletal System, as required by 20 CFR § 404.1520.  Doc #10 at 5.  To determine medical equivalence, the ALJ compares the medical findings to the Listing of Impairments to determine if the combination of medical impairments is "at least of medical equivalence to those of a listed impairment."  20 CFR § 404.1526.  If there is substantial evidence to support the ALJ's determination that plaintiff's impairments do not equal a listed impairment, the ALJ is not required to "state why a claimant failed to satisfy every different section of the listing of impairments."  Gonzalez v Sullivan, 914 F2d 1197, 1200 (9th Cir 1990).

Plaintiff relies upon Marcia v Sullivan, 900 F2d 172 (9th Cir 1990) to support his contention.  In Marcia, the court found insufficient ALJ's findings on medical equivalence because the ALJ only wrote: "The claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings * * *."  Id at 176.  The court held that the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of the impairments."  Id.

In this case, plaintiff points to the ALJ's finding that plaintiff's medical findings in the record are "not equal in

10

severity and duration to any Listed findings" (AR 20), asserting that it does not meet Marcia's requirement that the ALJ make specific findings on medical equivalence. Doc #10 at 5. This argument fails for three reasons.

First, in order to establish that his impairments equal a listed impairment, plaintiff bears the burden of producing evidence that offers a theory —— plausible or otherwise —— as to how his impairments equal a listed impairment. Lewis v Apfel, 236 F3d 503, 514 (9th Cir 2001). Unlike the claimant in Marcia, plaintiff has not advanced a theory as to how or why his impairments equal a listed impairment. Merely providing some medical evidence does not shift the burden to the ALJ to determine medical equivalence.

Second, the ALJ's decision indicates a careful and complete consideration of the evidence before him. The ALJ made findings throughout the decision that would support the conclusion that plaintiff's impairments did not equal a listed impairment. While Marcia requires that the ALJ make specific findings on the evidence, it does not require that the findings appear under any specific heading, but simply guards against summary conclusions. See, e g, Lewis, 236 F3d at 513 (holding that Marcia "simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings'").

Finally, plaintiff's medical records offer substantial evidence to support the ALJ's determination that plaintiff's impairments are not equivalent to Listing 1.02. To equal Listing 1.02, the claimant must be unable to ambulate effectively or perform fine and gross movements. 20 CFR § 404, Pt 404, Subpt P, App 1, §

11

1.00(B)(2)(a). The Listing defines "ineffective ambulation" as:

> * * * extreme limitation of the ability to walk * * *. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the function of both upper extremities.

20 CFR Pt 404, Subpt P, App 1, § 1.00(B)(2)(b)(1). Examples of ineffective ambulation in the Listing include: inability to walk on uneven or rough surfaces, walk at least one block or walk without a walker, two crutches or two canes. 20 CFR § 404, Pt 404, Subpt P, App 1, § 1.00(B)(2)(b)(2). Dr Pon's uncontradicted report concluded that plaintiff could sit or stand for six hours per day, lift ten pounds with his right upper extremity and could perform unlimited fine and gross manipulations. AR 239-41. Plaintiff's doctor prescribed a metal cane to assist his walking. AR 478. By plaintiff's own testimony, he can walk three blocks before needing to rest and uses only one cane. AR 468. These facts do not support a finding that plaintiff cannot ambulate effectively.

The Listing offers as examples of inability to perform fine and gross movements "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." 20 CFR § 404, Pt 404, Subpt P, App 1, § 1.00(B)(2)(c). Both examining physicians reported that plaintiff can perform fine and gross movements. AR 241, 291. Plaintiff built model cars, completed crossword puzzles, did laundry and dishes and prepared meals, AR 168, 483—all activities requiring the ability to perform a variety of fine and gross movements.

Based on the above facts, the ALJ's determination that plaintiff's impairments do not equal Listing 1.02 is supported by substantial evidence.

B

Plaintiff contends that the ALJ improperly discounted plaintiff's testimony regarding pain and numbness. Doc #10 at 6. In order to reject plaintiff's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Rashad v Sullivan, 903 F2d 1229, 1231 (9th Cir 1990). Unless there is affirmative evidence showing that plaintiff is malingering, the ALJ's reasons for rejecting the testimony must be "clear and convincing." Swenson v Sullivan, 876 F2d 683, 687 (9th Cir 1986). General findings are insufficient; the ALJ must identify which testimony is not credible and what evidence undermines the subjective complaints. Lester v Chater, 81 F3d 821, 834 (9th Cir 1995). The ALJ may consider the following non-exhaustive list of factors when weighing plaintiff's credibility: "[plaintiff's] reputation for truthfulness, inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [plaintiff] complains." Light v Social Security Administration, 119 F3d 789, 792 (9th Cir 1997).

The ALJ found plaintiff's testimony regarding the ability to use his hands, and numbness and tingling in his hands and feet not credible. The ALJ relied upon physicians' reports in discounting this testimony. AR 21. Both doctors found that

13

plaintiff could perform gross and fine manipulations with both hands. Id. This determination is supported by substantial evidence in the record, including the doctors' reports and plaintiff's own testimony regarding his daily activities. The ALJ found that there was no evidence in the record separate from plaintiff's own reports to support plaintiff's claim of tingling feet. Id. In any event, it is immaterial whether the claimed numbness or tingling of the feet was deemed credible, because the ALJ believed plaintiff could only walk three blocks before requiring rest anyway. Id.

The ALJ also properly discounted plaintiff's assertions of pain. In reaching his conclusion, the ALJ considered medical findings along with "claimant's daily activities, the location, duration, frequency and intensity of the claimant's pain, precipitating and aggravating factors * * *." AR 22. The ALJ also considered reports from the doctors, plaintiff's own testimony, and evidence provided by Bailey. Id. The ALJ made specific findings as to why he found plaintiff's testimony not credible, noting that plaintiff was comfortable sitting and going out socially with friends, working on crossword puzzles, building models and helping with housework. AR 22. The ALJ's decision to discount plaintiff's pain testimony was supported by substantial evidence.

C

Plaintiff asserts that the ALJ improperly failed to consider a closed period of disability in 2001-02. Doc #10 at 8. The law requires that the claimant be unable "to do [their] past relevant work or any other substantial gainful work that exists in the national economy" for a period of twelve months. 20 CFR §

**14**

404.1505(a). Contrary to the ALJ's findings, plaintiff claims that during this period his injuries and the resulting complications made it impossible to work. Plaintiff misreads the ALJ's decision. The ALJ did not find that plaintiff's injuries did not last for a twelve-month period, but rather that, although plaintiff could not perform his past work during the relevant period, his injuries did not preclude all employment; plaintiff was only limited to sedentary work. AR 21-22. In actuality, the ALJ found that plaintiff had met his burden at step four and proceeded to step five.

D

Plaintiff contends that the ALJ's RFC assessment was "not based on all the evidence" and should not withstand review because the ALJ discounted plaintiff's subjective testimony. Doc #10 at 9. But the critical determination is whether the ALJ's decision is supported by substantial evidence, not all of the evidence. Jamerson v Chater, 112 F3d 1064, 1067 (9th Cir 1997). The RFC finding is supported by a long discussion of the available evidence in which the ALJ considered not only medical evidence but also plaintiff's own subjective testimony. AR 20-21. The ALJ found, consistent with the medical evidence and doctors' reports, that plaintiff could stand for "30 minutes at a time, [walk] 3 blocks at a time, [lift] 10 pounds frequently and 20 pounds occasionally * * *." AR 21. Substantial evidence supports this determination.

E

Plaintiff contends that because the ALJ's RFC assessment and the hypothetical posed to the VE were not exactly the same, the

1  SSA failed to meet its burden of proving that there were other types
2  of work available to plaintiff in the national economy.  The ALJ's
3  hypothetical asked the VE to identify jobs that required no more
4  than an hour of standing at a time, whereas the ALJ found that
5  plaintiff could stand for no more than thirty minutes.  AR 22.  Due
6  to this apparent mismatch, plaintiff contends that the SSA failed to
7  meet its burden at step five.  Doc #10 at 10.
8          Even though the limitations set forth by the ALJ were not
9  identical to the RFC finding, however, the jobs identified by the VE
10 were unaffected by the discrepancy and the error, if any, was
11 harmless.  The VE's testimony identified many types of sedentary
12 work that did not require standing for longer than thirty minutes at
13 a time.  AR 447-49.  The sedentary work that the VE described
14 allowed for the employee to sit or stand at will, with no
15 requirements as to how long the employee must do either.  AR 447.

                                IV

18         For the foregoing reasons, the court DENIES plaintiff's
19 motion for summary judgment and GRANTS defendant's motion for
20 summary judgment.  The clerk is directed to close the file and
21 terminate all pending motions.

23         IT IS SO ORDERED.

                                    _____
                                    VAUGHN R WALKER
                                    United States District Chief Judge